of Internal Revenue at Balance, Ms. Ugolini for the balance, Mr. Robbins for the appellate. Good morning, Ms. Ugolini. Good morning. Please the court, I'm Francesca Ugolini, counsel for the Commissioner of Internal Revenue. The question in this case is how the government is supposed to enforce the Section 6038B penalty against people like Alan Farhy who simply refused to pay what they owe. He admits he willfully failed to report information about foreign corporations that he used to hide over $3 million from the IRS. He admits that he has no reasonable cause for this failure, that he owes the amount, but he says the IRS cannot collect it from him. The tax court went astray in accepting this argument because the IRS has the power to assess this penalty under its broad grant of authority in Section 6201A of the code. This is supported by the statute text, history, and context. The text of the statute speaks in very broad terms. It says the secretary is authorized and required to make the inquiries, determinations, and assessments of all taxes, including interest, additional amounts, additions to the tax, and assessable penalties imposed by this title, that's all of Title 26, or accruing under any former internal revenue law. We submit that the term all taxes should be read to include the Section 6038B penalty because the parenthetical that starts with including broadens the term taxes to include other tax related items, such as interest in various types of penalties. As this court and the Supreme Court have held, the term including is illustrative, not exhaustive. Ms. Evelini, it's difficult because we know from Sebelius that taxes and penalties are distinct, generally, unless we have a reason, or perhaps structural reason to think otherwise. The parenthetical including references at least three specific categories of penalties, additional amounts, additions to the tax, and assessable penalties, and arguably creates a negative implication that those specified ones are the kinds of penalties meant. It doesn't include, doesn't say other penalties, so what is it that you're relying on? You're relying on the fact that other types of penalties are referenced, and that the parenthetical itself modifies the definition of tax, and that therefore we should see the parenthetical as implicitly including other like items, such as the 6038B penalty. And I would push back, I think that that's right, you've correctly summarized our argument, but I would push back against the notion that the fact that three types of penalties are listed creates a negative implication that other types of penalties that are similar in character to the enumerated types of penalties are not included. The case law does not bear out that sort of negative implication. On the contrary, the case law makes very clear that there's a presumption that including is illustrative and not exhaustive, and when looking at what else might be included in a non-exhaustive list, it's appropriate to include other items that keep company with the enumerated items. What about, I mean oftentimes Congress will say including but not limited to, and then obviously we know that it's not an I mean, that would make it even more clear that including is illustrative and not exhaustive, but this court, we cited a few cases in our brief, the FDA case and the American Hospital Association case, interpreted the word including as illustrative and not exhaustive, notwithstanding that that extra language that would have really made it clear was not part of the language under consideration. You also rely on 7701C, which says that where including is used in the definition it's intended to be, you know, not exhaustive, but I don't see that that helps you with 6201A because 6201A is not a definition. That's fair. I think 7701 does not get us all the way there, but as I said, this court's case law and the Supreme Court's case law bear out the interpretive principle that the word including in a statute, particularly in a list like this where there's a parenthetical, introduces a non-exhaustive list of items, and even the tax court recognized this. That's on page 250 of the joint appendix in its opinion. It recognized that this phrase in 6201 is not necessarily limited to the enumerated items, but the reason it gave for not reading the languages covering the section 6038B penalty is because it said, well, this penalty bears no resemblance to taxes, whereas the other items in this parenthetical have some relationship to taxes, but that's true. The other types of penalties that are specifically listed, additional amounts, assessable penalties, if you look in chapter 68 of the code where those penalties are all listed, there are plenty of fixed dollar information reporting penalties similar to the 6038B penalty. This is exactly, this is very similar to penalties that are explicitly included in the parenthetical, and this does bear a close relationship to taxes because the form that was required to be filed here is filed with an individual's federal tax return. It provides information about foreign income and assets and transactions that allows the IRS to determine a person's tax liability, and if you look at section 6501, which provides limitations periods on assessment of taxes, it actually, there is a specific provision that references 6038 saying, if it turns out you did not report anything related to a foreign corporation, the limitations period doesn't start until this particular form required by 6038 is filed. Can I interrupt you? Can you tell me whether there's any aspect of the penalties that are set forth in 6038 that cannot be enforced if the only enforcement mechanism is a civil suit? No, I mean, so 6038 has two penalties. One is the reduction of the foreign tax credit, which I don't understand there to be any dispute that the IRS can assess that one because the reduction of the foreign tax credit results in an increase in tax. The IRS has the power to... I mean, I just interrupt for a second. It doesn't, we'll find out from your friend on the other side, but they don't seem to concede that, at least explicitly in their briefing. Did I miss that? I suppose you did. I don't know that they... I may have misspoke. I don't know that they conceded. I mean, the tax court, I think, seemed to recognize that the foreign tax credit reduction penalty in 6038C was assessable. I mean, that penalty results in an increase in taxes. And so under the plain language of 6201A, the IRS would have authority to assess an increase in taxes that is occasioned by reducing a credit. And that 6038C foreign tax credit reduction, that goes through the process for deficiencies. That's something that is subject to collection to process, hearing, and appeal to the tax court, unlike 6038B penalty for failure to file. Is that right? I believe that's right. I believe that the in the tax deficiency that would then require that to go through deficiency procedures. Right. And that would send it to the tax court, whereas the 6038B goes through basically its assessment and levy. Well, so, okay. So if the penalty is assessable by the IRS, as the government contends, the IRS would send a notice of the penalty assessment, and a taxpayer would not have the ability to challenge that in a deficiency proceeding in the tax court. But the taxpayer would be able to bring the very type of proceeding we have here, which is a collection due process proceeding. What Mr. Farr, he did was he didn't pay the penalty. He waited to get a notice of intent to levy. That presented him with administrative appeal options before the IRS. So that's a prepayment remedy, and then allowed him to appeal to the IRS. And taxpayers do not have that option. The IRS would just- Wait. He can or he can't go to the tax court on the 60... I thought he couldn't go on the 6038B. I'm thinking about Wheaton and Smith and actually our country home. He would not be able to go to the tax court in a deficiency proceeding, meaning he wouldn't get a to the IRS for the collection due process. That's not going to the tax court. Well, it goes first to the IRS. You get your administrative hearing before the IRS, and then if you disagree with the notice of determination that's issued, you can appeal that to the tax court. And that is how this case came up. But I thought the collection due process hearing was within the IRS. It is within the IRS. That's right. It's not within the tax court. The initial administrative hearing is within the IRS, but then the same statute that allows that administrative hearing, which is Section 6330, if you look at Section 6330D, it allows the taxpayer to appeal the IRS's determination to the tax court. So if you're unhappy with the outcome of the IRS administrative hearing, you can appeal to the tax court, and that's what Mr. Farhi did in this case. And then the tax court basically vacated the penalties because it held that the IRS lacked assessment authority, and that's now this appeal. So is it your position that the term accessible penalty applies to a penalty that is subject to a deficiency proceeding, and it also applies to a penalty that is not subject to a deficiency? Our view, so accessible penalty is defined nowhere in the Internal Revenue Code. The government's view is that an accessible penalty refers to any type of penalty that Congress has not specified must be collected by a civil action. So in this case, you know, we haven't directly argued that this is an accessible penalty, but we think that would be a fair interpretation. But to answer your question, so I think in the tax court, the commissioner initially had made an argument that an accessible penalty means any sort of penalty that skips over deficiency procedures. We're not making that argument anymore. But ultimately, if this penalty is accessible, a taxpayer can get tax court review. It just would come up through a procedure than the deficiency procedures. It would come up like this very case did, where you get to have an administrative hearing before the IRS. Not only do they look at the legality of the penalty, but they look at collection options. You know, if the taxpayer can't afford to pay it, that hearing is the opportunity to make an offer to establish an offer in compromise, enter an installment agreement, work out payment options with the IRS. All of that is then reviewable in the tax court, and so you're still in a prepayment posture, but you're just in a different type of proceeding than the deficiency proceeding. And then it's reviewable by this court. Go ahead. You agree that there are some penalties that are not accessible penalties, right? That's correct. There are two penalties in the code where Congress has specifically said they must be collected by civil action. There was actually a third when this accessible penalties language was added to the code in 1954. At that time, Congress also added three specific penalties that had to be collected by civil action. One of those has since been repealed, but it's our position that that language, accessible penalties, is meant to distinguish from the penalties that specifically have to be collected through civil action. And those two, just to remind us, are? They are 5761 and 7269, and then the 54 code, as I mentioned, also added 7263, which has been since been repealed. So what we have in this case, though, is congressional silence. You know, the commissioner has recognized, we've recognized in our brief that there's not an explicit coverage for the 6038B penalty, but given the broad, in our view, non-exhaustive language of the parenthetical in 6201A and the fact that Congress has accepted other penalties from the IRS's assessment power, we think the right way to read the statute is that this penalty is covered by the IRS's assessment power. In my view, one of the most persuasive parts of your argument appears in pages, I think, there are some penalties that where Congress uses language that clearly indicates that they are to be accessible penalties that wouldn't be able to be assessed under Mr. Farhi's brief. I think section 45, and I don't know if you cited it in your brief, but I think section 6038C might also be an example of that. I guess what I'm trying to determine is I'm going to ask this question of Mr. Farhi's counsel, you know, what are we to, I guess, make of that given that his argument is that, well, the commissioner's reading renders some language surplusage as well. I think, and we would submit that, frankly, under either reading, there's surplusage in the statute. I mean, just the very fact that there's 6201A and then there's two other provisions, 6671 and 6665, all repeat the same assessment authority for the same category of penalties. So, I see I'm over my time, so I don't want to keep talking about that unless you would like me to. You can keep going. We have a custom in this court that we will, as long as we have questions to ask, we're not holding it against your rebuttal. Okay, thanks very much. I was just going to say that I think the tax court is very persuaded by the notion of surplusage and that was what led the tax court to rule against the government in this case. But I think surplusage is not a useful canon in this case because there is surplusage under either interpretation. And I think the duplication and the surplusage in this case really is a red herring because at the end of the day, Congress only needs to provide assessment authority once. And we submit that it did so in 6201A, that that language is broad, that the parenthetical is non-exhaustive, and that it can cover other similar types of items that are not expressly listed. So, let me just, I know we went through this once, but so tax, and then it needs the parenthetical in 6201 in order to make clear that in this context, tax includes penalties because ordinarily the default rule under the code is that the tax is different from a penalty. And your argument is therefore that the parenthetical is not defining, like I said, is defining tax, but it's extending the definition of tax. Correct. But that the parenthetical itself is non-exhaustive so that it extends it in a way that is susceptible of including a penalty that is not denominated an assessable penalty, but should therefore be treated as an assessable penalty. Is that right? That's right. And if I could just add, you know, an additional thought to why that list should not be read as a discrete list, the three types of penalties mentioned on that list, these are not neatly identifiable categories. So, they do correspond to subchapters in the code. They do. However, even the tax court recognized that items outside of Chapter 68 are assessable by the IRS. And the code has yet a further provision in 7806B that says no inference is supposed to be drawn from groupings and labels within the code. And as we pointed out in our reply brief, two appellate court, two circuit courts, in the context of construing this very same language as it appears in a different statute in an interest provision, refused to read this same list as admitted to items in Chapter 68. It construed the list according to its plain terms. And that's the motor fuels carrier case that was by the appellate division of the Court of Claims, predecessor to the Federal Circuit, and then the Ninth Circuit in the Bardol case. The facts of those cases are a little bit complicated, and I'd be happy to explain them, but my point is that two circuit courts have already construed that exact language to, according to its plain terms and not limited specifically to Chapter 68. But as I recall, we have a much more recent case that goes the other way. I'm just searching for that. The Fourth Circuit case. Which is, sorry, I'm just looking for, you know, I'm referring to, Ms. Delaney. I'm afraid I don't. Was this a case, was this a Fourth Circuit case that related to one of the Affordable Care Act penalties, by any chance? Well, let me just ask so I'm clear where Judge Pillard was asking you, just sort of summarily here. Basically, your position is that Congress gave the Commission a very broad authority and absent indication, clear indication by Congress that it's taking it away or it's limiting it somehow. The IRS should be viewed as having the authority, just based on what I'll call the plain broad text and this non-exhaustive parenthetical, and that all of the canons that apply where the tax code is involved. I would agree with everything except the very last statement. I don't think we're saying that all of the usual canons shouldn't apply. Well, I'm thinking about you say, you know, there's surplus, depending on your point of view, no matter which interpretation you think is the right one. So that canon is out of the sort of non-involved and canons about, you know, specificity versus generality. That's what I'm thinking about, those canons that we often use and that the Congress, at least the committees, use in trying to understand what was the Congressional intent. And there've been some articles written by the academy saying that, you know, we're both, that is courts and the legislature are proceeding on paths that really don't coincide with one another's understanding of what's happening in the legislative process. So that here, that, your argument falls very much in line with that thinking. We have some broad text. The usual canons that we look to don't apply. And when you started out and you characterized your colleagues' argument, I kind of thought it was no way for the tax, for the commissioner to collect, but rather he had to do it in a certain manner, mainly through a civil action, not by assessment. Right. So that would be a civil action brought by the Department of Justice. It would not be a proceeding brought by the IRS. But I guess I just wanted to respond to your point about, I mean, the larger question of in, I believe it was 1982, so it has been out there for more than 40 years. In 1997, so the IRS has been assessing and collecting this penalty per its broad grant of authority under 6201A since that time. In 1997, so at this point, this is 17 years into this well-established administrative practice, Congress increased the penalty from, at that point, I think it was $1,000 initial penalty to a $24,000 continuation penalty. It increased the penalty to its current amounts of $10 and $50. And in all of this time, including with, as Farhi has pointed out, complaints from the Taxpayer Advocate Service about the IRS enforcing this penalty, in all of that time, Congress has never seen fit to step in and change the way the IRS is assessing and collecting this penalty. So one of the concerns that I understand is raised by the IRS's position here is whether, given the, what is it called, the pre-appeal conference that one can get, and this is an issue, or sort of the overall process, I think is well described in our country home enterprise. It's a Seventh Circuit case. If a taxpayer has a pre-appeal conference, like as in that case, then they don't even get the collection due process hearing, and therefore, that truncates, that prevents them from going even to the tax court. So that was a case in which there was a tax penalty, and then there was a failure to file penalty. And I guess my question is whether the alarms that are raised, that let's say Mr. Farhi had had a pre-assessment conversation with the IRS, under our country home, the concern is that that could cut off his ability ever to have tax court review of this filing penalty. So I'm not familiar with our country home case, and I'd be happy to read it and submit a supplemental letter, but there is no, first of all, in the context of the 6038B penalty, there is an opportunity to confer with the IRS before assessment, is my understanding, because what happens, and this is explicit in the statute, the IRS is supposed to send a notice of your failure to file, and the notice says you failed to file, but if you think you have a reasonable cause, write us and let us know what your reasonable cause is. And that's also explicit in the statute. I think it's 6038C4 specifically requires this secretary, so this is the IRS, to make determinations about reasonable cause. So there is some opportunity for a sort of conversation with the IRS about whether you owe this penalty in the context of learning that you've failed to file. But as to the point of is it possible for tax court review to be cut off, I'd have to take a look at the our country home case. I really don't see how that is possible. That is, I mean, there is some concern in the scholarship that this would happen to someone who's facing a reporting penalty, and if they do have a pre-assessment process, even with the IRS, that they would not have an opportunity for a collection due process hearing, because that would be a second similar. And therefore, they would not have an opportunity to appeal to the tax court. And the question I was going to ask, although it's a little bit unfair, but I'm just put it out there anyway, is in our country home, there were kind of two tracks going on. The tax court was, there was a deficiency proceeding on the tax liability, and a tax penalty was folded into that. But the penalty for failure to report was going on a separate track, because it's not subject to a deficiency proceeding. And one way of understanding the situation there, where the taxpayer was unable, due to the pre-assessment interaction with the IRS, to have a collection due process hearing and go to the tax court, one way of understanding that, and this is what I'm was being determined, the same liability that would affect the filing penalty, the failure to file penalty, was being determined in a proceeding that was going to the tax court on the deficiency. And that therefore, the tax court's determination of that liability collaterally stopped the treatment of the filing penalty. The only thing that wasn't collaterally stopped on that was the amount of the filing penalty, and perhaps something like payment terms. But that is one of the concerns that your position raises, and it would be helpful if you are able to address it. Yeah, and so actually, I think now, and like I said, I'd be happy to take a look at our country home and send in a supplemental letter, but I think that I know now what you're getting at in that case. So in the collection due process statute, section 6 through 330, it does say that if you have had a prior opportunity for meaningful review of, let me just back up, usually a collection due process proceeding is to, is an opportunity for the IRS to check that, you know, the procedures of law were followed here. It's an opportunity to review collection alternatives if the taxpayer can't pay, and balance the need, you know, like taxpayer enforcement with sort of fairness to the taxpayer. Now the statute does say, so normally it's not a place to review your underlying liability, but the statute does say that if you did not have a prior opportunity to contest your liability, then you can contest your liability in a collection due process hearing, and then that's also reviewable by the tax court. And so yes, there are, there are a lot of cases out there where that question, you know, has been litigated, where, you know, maybe a taxpayer did have a prior opportunity to have their tax liability reviewed, that might have been in a tax court deficiency proceeding, and then the question becomes, okay, so you had your first bite at the apple, then you didn't pay, now we're talking about collection, and so in the collection due process hearing, the taxpayer wants to raise challenges to their liability again. If you had your first bite at the apple, you don't get the second bite under the CDP statute. So I think that's what our country home is probably talking about, but that would not is not subject to deficiency procedures in the first place. Well, it's the same penalty in our country home, except that because there's also a penalty for failure to pay, that same issue is going through deficiency procedures, even while the 6038B isn't. So there's kind of a coordination issue. I actually have a related question, and it makes sense to you that you wouldn't have a second chance, partly because if that same liability issue is going to the tax court, why would you have a separate tax judge looking at the same issue? You would have incompatibility questions. There's, you know, collateral estoppel is between whichever one goes first, and there's just a coordination issue, and I guess the same is potentially true of Mr. Fari. So you're thinking about the coordination between 6038B, the fine amount, the dollar amount, and 6038C, which is the offset, and the coordination between those two. Under Mr. Fari's position, if the IRS has to have the Justice Department go to court in order to collect 6038B, then where is the opportunity? You haven't made this argument, but I'm wondering why. Where is the opportunity to coordinate? You're going to have the federal district court in the 6038B proceeding determine liability and a tax court in a case in which there's also a tax deficiency and potentially penalties related, or the offset that is going to be wrapped up into the deficiency proceeding, right? Right, although I don't know, you know, I would have to take a closer look at whether the foreign tax credit reduction penalty and the fixed dollar penalty, I know they have to be coordinated. The statute provides that you can't have both, but I'm not sure if they're actually sort of intermeshed. I'm not sure if the way the IRS does it is they decide whether to assess one versus the other, so that if you have... They offset the dollar amount against the reduction in tax, so at the end of the day, the whole case has to come together, but even more fundamentally, if there's a proceeding on the tax liability and the offset, I mean, putting side to side, the percentage penalty, then you could have a federal district court determining that same liability question, no? And it seems like you have an even more serious collateral estoppel problem than in our country home, and whereas in our country home, the IRS is in a position, as they did there, they stayed the proceeding, the final levy on the filing penalty pending the outcome of the related deficiency procedure and appeal to the tax court, and that sort of allows the IRS to be in the driver's seat and make sure that if they lose, for example, on the liability issue in the tax court, that they'll just drop the filing penalty. Yeah, I'm not sure how often... I mean, I know one of the reasons the 6830 penalty was enacted, I mean, this is in the legislative history, is that the 6038C, the credit reduction penalty, was confusing and hard to figure out. It only applies if the taxpayer paid foreign taxes to begin with, and so you get a foreign tax credit. So I'm not sure in practice how often this problem arises where you've got sort of a mix of both penalties, and then you've got maybe like a deficiency piece to be worked out and then a non-deficiency penalty, but I would just submit that this entire procedural morass that you're describing is more of a reason to keep this in the IRS's hands versus sending all of this to the Department of Justice to sort out. That's my question. I wonder whether I'm correct about that and why it's not an argument that you relied on. And so, yes, it's effectively a friendly question, but puzzlement about whether I'm right about that as a structural matter. I think I need to think about it a little more, and like I said, I'd be happy to send a letter following up about Country Home. I mean, I think you are right that we did posit in our brief that sending these cases to the Department of Justice would be worse for taxpayers for a few reasons. I mean, mainly because they would not have the opportunity to go to IRS appeals or have a collection due process hearing. One other reason is actually if the penalty is subject to assessment by the IRS, there's yet a further statute, 6751, that requires supervisory approval for those taxpayer protections go away. But it's also way worse for the IRS because, I mean, how often are you going to be able to get the Justice Department bringing lawsuits? I mean, there's a reason that Mr. Farhi's on the side he's on, notwithstanding what you say about it being better for taxpayers. Right. No, and it's certainly better for the government. I mean, no, and there's the question. I mean, the IRS, they are the tax collection experts. They have the capability and the machinery and the know-how to do this. One other piece that is less favorable to the government under the tax court's ruling is that the government has, DOJ would have half as much time to collect than the IRS does. In the code, Congress gave the IRS 10 years to collect an assessment. But under just the general 28 U.S.C. statute, I think it would be 2462, the Department of Justice would have to bring a civil action within five years. So certainly, it's certainly better for the government that the IRS be able to assess this penalty. But I wanted to point out that it's also better for taxpayers as well. You know, I've used up a whole lot of time. Oh, sorry. Well, there are a number of provisions in the code that provide for penalties in context of criminal offenses. And one thing that occurred to me, not as a tax expert, is accessible penalties in the list, in the parenthetical, might be distinguishing from penalties that must be collected by criminal action. But is it the case that the IRS can also assess penalties that are subject to criminal proceedings or no? So my understanding in a criminal context is that, you know, if there's a penalty that's actually a criminal fine, that has to be determined in a criminal prosecution. But in terms of other civil penalties that might be available, I mean, that civil proceeding always would come after a criminal proceeding if there is one. And so anything related to assessment would come afterwards. The IRS doesn't proceed with the civil side until after the criminal side is over. And just to be clear, you're not arguing that the 6038B penalty is within any of the terms explicitly listed in the parenthetical? I mean, we haven't made that argument in our brief. I mean, we do think that if you looked at the plain, a plain meaning of those terms, the code nowhere defines what an additional amount is. The items listed in Chapter 68A that are put together as additional amounts and additions to tax include things like failure to file penalties. You're bringing me back to the thing I left hanging. It's the whistleblower case, the tax court case that I was thinking of that does treat the additions to the tax and additional amounts as terms of art. And you were saying that those are broader, more encompassing, undefined, but the tax court actually has said otherwise. That's right. The tax court in that whistleblower case was looking at, so that's a different statute, 7623, and it lists the items that if you provide, if a whistleblower provides information and the IRS ends up collecting proceeds as a result of that information, then the whistleblower gets a percentage of the collected proceeds. And so I believe the statute lays out, it lays out what the pot of available funds are. And I believe in that case, the dispute was over whether an FBAR penalty that was collected, so that's, those are penalties collected under the Bank Secrecy Act. This is administered by the IRS under an MOU with FinCEN, but the IRS is also involved in collecting, assessing and enforcing FBAR penalties for failure to file. FBAR. FBAR, F-B-A-R. It stands for, it's like a foreign account reporting penalty under, I think it's 31 U.S.C. 5321. And so the question in that case was whether, I guess the IRS ended up collecting additional taxes from the underlying taxpayer, but then also realized there were these unfiled foreign bank account reporting forms and collected FBAR penalties. And the question was whether I think the FBAR penalties counted as additional amounts that were part of the pot. You know, in that case, I mean, I don't think the tax court needed to hold that it was limited to Chapter 68 because there was another way to decide it, just based on, you know, FBAR penalties are not even part of the Internal Revenue Code. They're provided for in 31 U.S.C., not Title 26. So, for example, FBAR penalties would clearly be outside the scope of this, of what's covered in 6201A. But the language in 6201A is, you know, all taxes, including, and then this little list, imposed by this title were accruing under any former Internal Revenue Law. So an additional amount under this title is covered by 6201A. And that, that phrase additional amount is also undefined and very unspecified in the code. Thank you. Thank you. We'll give you some rebuttal time. I was just going to reserve a few minutes, if that was okay. Thanks. May it please the court. I'm Edward Robbins. I'm the lawyer for Mr. Farhaey. I'm with the firm of Bachman, Salkin, Tasher & Perez, a tax firm in Beverly Hills. Before I get into one of the specific points I wanted to make, I wanted to say that the case the tax court wrote in this matter is magnificent. I thought I did a good job of briefing it. I'm not even at the same zip code as she was. It's correct, comprehensive, well-reasoned. She hits virtually every issue that's there. I really can't do much to add to it, and hopefully I won't see anything to detract from it. What I would like to respond to is, I mean, if the court is concerned about the process, I can answer some of those questions. We are here on the result of a collection due process. That's how we got started. Very briefly, and I've done a number of these things for the taxpayers, you can't, as a practical matter, you can't get to the merits of your tax liability through a collection due process. It was not designed to do that. It was designed to make sure that the collection procedures were correct, everything's in order, the taxpayers are getting consideration for their complaints, I can't pay this, or maybe the assessment's late, whatever. It's very rare that you can finagle a merits determination to the tax court through a collection due process hearing. Normally, you'll get a letter as the IRS is trying to collect from you. You'll get a letter, and the first one will say, if you don't like this, you can go to appeals. That's your opportunity right there, according to the IRS anyway. Go to appeals, meaning the Office of Appeals? Yes. That's your opportunity, and if you have your opportunity, you can't get the merits into the tax court. We didn't go to the merits in this case. We just skipped through all that. We went on the core jurisdictional basis for the collection due process. We were challenging the, quote, mode of collection, and so we never got into whether we'd have a prior opportunity or something like that. So what's your strongest authority for the notion that if there weren't a parallel proceeding as there was in our country home, if there was just as in your case, standalone, well, there was the criminal proceeding, but there the merits with the appeals office, then assessment, then pre-collection due process? Opportunity or not, in your view? Yes. Yes. So that would be available, and then if you went on appeal to the tax court from there, the issues raised on liability before the appeals office and issues raised on whatever ability to pay or calculation before in the collection due process, all those would be rolled into the tax court appeal. I believe that's true. There's an anomaly with the government's approach that we've heard here this morning, and I want to bring this up because I think it's important. You look at their briefs, you see a theme here that Congress could not possibly have written this 6038B penalty with no assessment authority. Impossible. It's an, quote, absurd result. It's an anomalous result. No way Congress could have attended this, and we hear this theme over and over again. It's at pages 11, see it, page 21 of the original brief, page 22, page 29, and the reply brief at page 2. Without any support, they assume Congress would never have intentionally withheld assessment authority for the 6038B penalty because that would be absurd. Let me suggest it's far from absurd for them, for Congress to withhold assessment authority on the 6038B penalty as well as any other information penalties. The 6038B penalty is not alone. There's at least 16 others in the foreign information realm that don't have specific assessment authority as we don't have here. Why would Congress want to do this? Well, they would withhold the IRS's supercharged collection powers from the IRS when they try to collect on these penalties, and there's a good reason for that, and in fact, the government gave us a clue as to that reason. On page 6 of their original brief, they note that Congress, when they were looking at the 6038B penalties, this is in the congressional record, Senate Report 97-494, Congress was concerned because the 6038B penalty could be, quote, unduly harsh in some cases. Well, indeed, it can be unduly harsh in some cases, and in fact, it is unduly harsh in thousands of cases, and we set that out at the Joint Appendix pages 169 through 181. What happened was the IRS decided it would be a good idea to systemically assess some of these foreign information penalties, and the first experiment they did was a 5472, which is an analog of 5471 but for companies, and then they went to a second one for the analog to partnerships. They did systemic assessments, which means if you're the taxpayer, and they did this to thousands of people, you're the taxpayer, and you'd find out, oops, they should have filed a 5471, and you filed it late. They systemically assessed your $5,000 penalty. You put your reasonable cost statement on 5471 and your reasonable cost. They are instructed, you find this on the internet, by their own rules for their employees. Employees are instructed to ignore the reasonable cause assessment, excuse me, the reasonable cause argument, and just go ahead and assess, and if the taxpayer wants to raise reasonable cause, I guess you can raise it somewhere else, but not here. So this taxpayer, trying to get in compliance, trying to do the right thing, files the tax return, files the 5471 late, and they hear from the IRS in the first instance, you owe us $10,000. Is this in your brief? Yes, it is. I cite the joint exhibit, page 169 to 180. I don't have my brief in front of me, but it's there. It's in the joint appendix, and I refer to it in the brief. It's basically a horror show. Well, what about the government points out in their reply brief in pages 13 to 15 that essentially your proposed interpretation of 6201A would mean that some penalties that Congress specifically intended to be assessable wouldn't be assessable under your reading, and the example that they give is, I think, section 45, IRC section 45. So what's your response to that? Well, my response to that is the same response I give for the FAR A situation. There's either a specific assessment authority for the penalty or additional amount or anything else, or there's not, and I don't have my brief in front of me. If there's not there, Congress hasn't put it there. They just can't assess it. Well, in 45, I guess it's B7, B Romanet 2, it says deficiency procedures shall not apply with respect to the assessment or collection of any penalty imposed by this paragraph. How are we to construe that other than that Congress intended that those penalties are to be assessable penalties? Yeah, I think that's the way you construe that with that language. Something analogous to that language isn't present here is foreign information. How can it be assessed if there is no specific authority to assess it either in 6201A or elsewhere in that section, IRC section 45? Well, in my opinion, it can either be assessed or it cannot be assessed, and if you're telling me the thing says it can't be assessed, then it can't be assessed. I'm not familiar with that section. Well, I mean, it's in the reply. They say that your interpretation of 6201 results in kind of a nonsensical result with respect to this section because Congress intended for that penalty to be assessable, but if 6201A doesn't give them that authority, then nothing else gives them that authority. I mean, that's your contention, right, is that 6201A does not confer any general authority to assess penalties? Correct. Okay, so the authority has to come from the actual provision that creates the penalty itself. Not necessarily. I'm okay with the theory that there are other things that that parenthetical could capture, but they have to jump through some hoops to get to there. It has to kind of look like tax. It has to have something to do with tax, such as interest on a tax, and they can assess that, but there's no tax element in the foreign information penalties. You can't look at the foreign information report and say it has anything to do with tax. It's just a report about facts. It doesn't fit in that parenthetical. All the other elements have some kind of tax aspect to it. Well, what about your friend on the other side's reply brief where they say, well, the tax court got that wrong because the fixed dollar penalties are very much like lots of other penalties that are included in Chapter 38. Do you say that they're just all about that? They're really not like those other penalties? I'm sorry. Could you do that again? So, the reply brief points out that they believe that the tax court simply got it wrong by construing the fixed dollar penalties of Section 638 as completely different than the other sorts of penalties that are in subchapter 68 that are accessible. Well, they're specifically made accessible in 68. I understand that, but the tax court believed that the 6038 penalties are just like completely different character or type of penalties that aren't similar to any of those that are in subchapter 68. I think the opening brief and the reply brief of the commissioner says, well, that's just not correct. Those fixed dollar penalties are similar to lots of different penalties that are in subchapter 68. I agree that there are penalties in Chapter 68 that are accessible, and they're accessible, for example, 3520 penalty for gifts. There's no specific assessment authority, but for other things covered by 3520, there is specific assessment authority to assess that. So, Congress can and has, in my view, picked and chosen various and sundry taxes to be accessible or not accessible. The reason you might deem it or cause it to not be accessible if you're in Congress is you don't like the penalty, and you may be persuaded to vote for it, but I want the enforcement mechanism cut back because that will cause the IRS to take a little bit longer to look at these things and not do something like summarily assess with no contact at all to the taxpayer, summarily assess 10,000 penalties for billions of dollars, only to turn around six months later and You don't question whether there's authority to assess the penalties under 6038C, which are the offsetting percentages. Yeah, the offsetting percentages, I think, have a tax element to it. Right. So, if there's a tax element to it, yeah, they can assess that. That would, oh, that's a good point. That would fit in the parenthetical. If they had bothered to put it in there, it would fit in there nicely. Okay, but what about the coordination problem that I was asking Mr. Bellini about? If there is a case that involves 6038C penalty, but also 6038B, and that would presumably go under two separate tracks because the 6038B penalty is not a deficiency. It wouldn't ride along with the deficiency that, which the tax credit is going to be offset. And so, you'd have liability on 6038C going to the tax board. Okay. And under your theory, you'd have liability for the 6038B going by an action from the Justice Department to a federal district court. What if they come up different with conflicting? Well, that's, I guess, an administrative problem that pops up from time to time. But it's a serious administrative problem because then you have this randomness of whichever reaches judgment first would be binding on the other, or is there a hierarchy? Well, that's a- Tax court of the federal district? In my view, that's a problem they'd have to work out because there's no assessment authority for the 6038B penalty. Why shouldn't we read that as a reason that Congress assumed that the 6038B penalty was assessable? Because then it would be as in our country home that IRS could hold the assessment of that pending the resolution of the tax court. Tax court said no liability. They'd let go of the filing fine. They have five years to sue for it. That should be plenty of time to work the element out. They have five years to sue to collect the, under my theory, to collect the 6038B penalty. So I don't see a conflict coming up. Why would the Department of Justice, number one, probably isn't going to take it anyway. It's not big enough. That's the key to this switch. And if they do, if it's a big number, they say, well, we're going to have to cover this number. That should be easy without interfering with anything else. I'm sure the Department of  Tax will work the other one out. That's where you work that. So part of your response to the absurdity is these are relatively small penalties. They're there kind of more as deterrents than as something that is regularly going to be collected, which is, you know, the various provisions of the tax code. And that the members who voted for it were thinking it's more of a message, a bark than a bite. I would not agree that they're small penalties. $10,000 penalty on the front end is big to me. It may be big for the taxpayer, but for the Justice Department, I'm not so sure. Oh, the Justice Department wouldn't touch that with 10 foot pole. That's my point. So under your theory, those would, you know, that you're seeing this as more of a big, in your view, a big bark, $10,000, that's going to encourage people to file, but it's not going to be often collected. I think, well, this is urban legend inside baseball. I think DOJ has a $100,000 cap on the FARA referrals. Precisely. Which makes sense. So my characterization is correct in your view that we're trying to think of what would Congress purpose be? And I hear you saying, I mean, put it in your own words. I just want to understand that this is not absurd. It's not incoherent because it's a message to taxpayers. You better file. And they don't necessarily know whether their case is going to be one that many people in the field know that there's a $100,000 cap. Maybe I just blew it. Well, now you have a chance to reply. You can blame me. Yeah, but that's a, it's a serious penalty and there's no reason to think the taxpayer is necessarily just going to blow it off. The IRS can still send out the done letters and the increasing threats. You better pay this. We're going to sue you and, you know, stuff like that. And in Mr. Fara's case, it gets to be above $100,000. They're going to actually come after me. Well, yeah. So there's ways to deal with that. I think that the procedure of making the, what I call the supercharged collection powers unavailable to these foreign information penalties is a good move because what they did, what IRS did when they exercised the powers unlawfully, in my opinion, that they exercised them, they made a mess. And it's right there in the record. You had a rebuttal to the, the government makes an assertion that if, if the section 63AB penalties are excluded from the expanded definition of tax under 6201, that that would not only gut the IRS's ability to assess, but also to make inquiries or determinations of the penalties. And you argue, well, the IRS has plenty of authority elsewhere. And you point to 7601, 7602. Yes. And as I read those sections, those really empower the IRS to examine books and, and witnesses to determine the correctness of returns. Yes. Reliability for taxes. But, but in the situation of 6038, there isn't a return involved there. So that wouldn't apply. No, it would apply. In the real world, assuming our theory is correct, and you cannot assess 6038B penalty for a 5471 late filing. In the real world, if the government wants to get into that form, they can do it. They can do it. They can collect all of that information on the 5471 form in the context of a tax examination of the taxpayer. There's no defense a taxpayer has that, oh, you can't see that because there's no assessment authority, C7601A. That's not going to work. The test for the information gathering capacity of the IRS is the broadest thing imaginable. They can get anything that may be relevant to the investigation. I can remember many times standing in front of a judge and they asked me, well, how is that relevant, Mr. Robbins on summons enforcement? And the answer was, I don't know, maybe. That's the test. And you don't know it until you see it. So they're going to be able to... Oh, sure. ...whether the form is filed. Sure. You're not seeing examining books related to the correctness of returns. It could be the correctness of the absence of a return. It could be anything. The information gathering capacity of the IRS is the most broad thing I think you can imagine. You put little stock in the inquiries or determinations. So let's see. Am I over? You are. I have a question. So there are some provisions in Title 26 where Congress said that the tax penalty shall be enforced by a slow suit. Yes. And they say that in Title 26. Yes. You're saying that, okay, they didn't do that here in Title 26, so they have to rely on this catch-all civil enforcement statute that's in Title 28 at 2461, right? Well, I always understood, and I could be wrong, the penalties or the sections that have a specific command from Congress that you can only collect this through a civil suit, I always assumed that was you send it over to the Department of Justice and they do their thing and collect it. I don't think there's another, I don't think the IRS goes into court on their own. They refer it to DOJ. Whether it's the DOJ or the IRS lawyers who are bringing the civil suit, my question is more focused on in the tax code, Title 26, there are some penalties where it says there in the tax code this is to be civilly enforced. Yes. It didn't say that with 6308. You say that, well, we read in that, well, it can be enforced through the kind of general authority to enforce through civil enforcement under Title 28 outside of the tax code. Yes. So what other penalties do you believe are enforceable under Title 28 civil enforcement? All of the ones that you listed in the brief? Yes. And I will make a disclaimer. I kind of put those together on the fly, a lot of them. I think there are 16 foreign information penalties that track the FARA situation with no specific assessment authority. And for those in our view, under our theory, for those, ultimately, if the taxpayer is forced to pay, they will be taken to a civil court and district court and sued for it. They'll have a demand for pay this amount, give us $10,000. They say no, send it over to the Department of Justice, and they will sue them to collect a debt of the United States. It's a debt of the United States. And in the process of that lawsuit, they can do liens, they can seize property, they can do whatever you can do in civil suit and district court. Only after they've established a judgment. But that's right. So it's a very different burden. Yes. And can you provide any example where that has happened with any of those penalties that you list that have to be enforced in that way? I can't, because IRS is assessing them. In my view, they are illegally assessing these penalties. So the answer to the question is no. But I haven't seen a $100,000 case be forwarded from the IRS to DOJ tax. But sooner or later, they're going to have to start doing that. So under your view, for example, in 26 U.S.C. 7272, there's a penalty for failure to register. It's not referred to as an assessable penalty. It's just referred to as a penalty of $50. Right. And it doesn't say that it has to go to court and recover it in a civil action. But your position is, if the United States really wants to collect that, if it doesn't get it voluntarily, it has to go to court. Yeah. So they don't necessarily have assessment authority. But you're saying they don't. Well, yes. If they are lacking assessment authority, the only other alternative that I'm... Well, they can beg the taxpayer to pay it, and they might get a voluntary payment. If it doesn't say assessable penalty, and it's not in Chapter 68, then under your theory, it's not an assessable penalty. Correct. Okay. And the remedy is to... Go to court. Go to court and sue. And there's obviously an administrative problem for the IRS with that, because DOJ is not going to take a $50 case. Judge Rogers, did you have other questions? No. You're welcome. Thank you, Your Honor. Thank you very much. We especially appreciate the experts on... I've been doing this for 44 years. Longer than this division has been in... Yeah. All right. Ms. Ugalini, you reserved or sought to reserve... I sought to reserve two minutes. I just have a few points to make, so it might be less than two minutes. I just wanted to point out, I think that I heard my colleague concede now that the parenthetical in 6201A could cover other things that are not specifically listed there. And if you take a look at page 11 of our reply brief, we listed there six other types of penalties that operate similarly to the 6038B penalty in the sense that they are fixed dollar reporting penalties that are not necessarily derivative of a tax liability. I just wanted to make a couple points in response to what my colleague said about what he characterizes as systemic assessment problems with this penalty. In this case, there were no challenges to the penalty, the legality of the penalty, ability to pay, all the types of complaints about fairness or ability to pay that could have been raised in a collection due process proceeding were not raised here. That's at pages 14 and 15 of the joint appendix. That is the appeals officer's termination after the CDP proceeding. Your friend said that you can't really get into them challenging the merits and the collection due process proceeding. Do you agree with that? For this type of penalty, you can just because there's no prior opportunity to contest your liability. And this goes back to the discussion that Judge Pillard and I had that goes back to the our country home case. In a collection due process proceeding, if you did not have a prior opportunity to contest the liability or the amount, then you can raise that in a collection due process proceeding. He did not point out that this is a case, if you look at page 93 of the joint appendix, Alan Farhi signed a non-prosecution agreement in which he agreed to pay all applicable taxes, interest, and penalties, and yet here we are. You should have added a sentence there that required them to agree that they could be assessed. You know, the time to get someone to agree to something is when you have the gun to their head. Your point is well taken. Well, I'm not going to, I'll not reach my last point. Unless the court has further questions, I would just ask this court to reverse the decision of the tax court. Thank you. Thank you. Okay, just a minute.
judges: Pillard, Wilkins, Rogers